JUDGE KATHLEEN CARDONE

FILED

2023 FEB -3  PM 1: 15

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | |
|---|---|
| **BRANDON CALLIER,** | § |
| | § |
| **Plaintiff,** | § |
| | § |
| v. | § |
| | § |
| **MILBERG COLEMAN BRYSON PHILLIPS** | § |
| **GROSSMAN, PLLC,** a Tennessee Professional | § |
| Limited Liability Company | § |
| **Defendant.** | § |
| | § |

**EP23CV0049**

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.      Plaintiff BRANDON CALLIER ("Plaintiff") a natural person, resident of the Western

District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.      Defendant MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC

("Milberg" "Defendant") is a professional limited liability company organized and existing

under the laws of Tennessee and can be served via registered agent Gregory M. Coleman at 800

S Gay Street, Suite 1100, Knoxville, Tennessee 37929.

### NATURE OF ACTION

3.      As the Supreme Court recently explained, "Americans passionately disagree about many

things. But they are largely united in their disdain for robocalls. The Federal Government receives

a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For

nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am.

Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

4.      Plaintiff Brandon Callier ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant's telemarketers/agents placed illegal unauthorized telemarketing phone calls to him in violation of the TCPA.

5.      As part of marketing their services, Defendant hired and authorized telemarketers to place illegal unauthorized phone calls to Plaintiff's cell phone that used an automatic telephone dialing system ("ATDS").

6.      Plaintiff never consented to receive any of these phone calls, which were placed to him for telemarketing purposes.

## JURISDICTION AND VENUE:

7.      This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

8.      This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendant's telemarketing calls to Plaintiff, and adds little complexity to the case, so it is unlikely to predominate over the TCPA claims.

9.      This Court has personal specific jurisdiction over Defendant because they called Plaintiff with the express intent of representing Plaintiff, a Texas resident, in a legal matter. The events giving rise to this lawsuit occurred in this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant regularly conducts business in the State of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

2

11.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

12.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

13.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

14.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

15.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

16.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

17.     According to findings of the FCC, the agency vested by Congress with authority to issue

regulations implementing the TCPA, automated or prerecorded telephone calls are a greater

nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

18.     The FCC also recognizes that "wireless customers are charged for incoming calls whether

they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing*

*the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

19.     The FCC requires "prior express written consent" for all autodialed or prerecorded

telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's

written consent to receive telemarketing robocalls must be signed and be sufficient to show that

the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing

the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded

messages by or on behalf of a specific seller; and (2) having received this information, agrees

unambiguously to receive such calls at a telephone number the consumer designates. In addition,

the written agreement must be obtained without requiring, directly or indirectly, that the

agreement be executed as a condition of purchasing any goods or service.

20.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

regulations "generally establish that the party on whose behalf a solicitation is made bears

ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing*

*the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

21.     The FCC confirmed this principle in 2013, when it explained that "a seller …may be held

vicariously liable under federal common law principles of agency for violations of either section

4

227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

22.    Under the TCPA, a text message is a call. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016).

## FACTUAL ALLEGATIONS:

23.    Plaintiff successfully registered his personal cellular telephone number ending in -4604 on the National Do-Not-Call Registry since December 2007.

24.    Plaintiff registered his phone on the Do-Not-Call Registry to obtain solitude from invasive and harassing telemarketing phone calls. The alleged telemarketing calls prevented Plaintiff from using his phone for legitimate purposes.

25.    At all times relevant hereto, Plaintiff maintained and used a residential cellular telephone line, with a phone number ending in -4604.

26.    Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

27.    Defendant Milberg is a law firm that is headquartered in Tennessee.

28.    Defendant Milberg targets consumers who were exposed and harmed by Camp Lejeune contaminated drinking water between August 1, 1953, to December 31, 1987.

29.    Defendant Milberg advises consumers who were exposed and harmed by Camp Lejeune contaminated drinking water that they are entitled to compensation in order to represent them and file a claim on behalf of these consumers.

30.    Defendant Milberg benefits financially when they represent consumers who were exposed and harmed by the Camp Lejeune contaminated drinking water.

31.     As part of their marketing, Defendant Milberg hires and authorizes third-party telemarketers to solicit their legal services through illegal telemarketing calls that violate the TCPA, National Bar Association code of ethics, and Tennessee State Bar Association code of ethics.

32.     Defendant Milberg is aware of the TCPA, National Bar Association, and Tennessee State Bar Association prohibitions against solicitation but knowingly violates these prohibitions for economic gain.

33.     Defendant Milberg approved the contracts with the telemarketers.

34.     Defendant Milberg authorized the payments to the telemarketers.

35.     Defendant Milberg paid the telemarketers out of bank accounts they own and control.

36.     Defendant Milberg is well aware that the unauthorized phone calls being made on their behalf soliciting their legal services violate the TCPA.

37.     Defendant Milberg knowingly and willfully violate the TCPA because doing so benefits them financially when they generate new clients through illegal telemarketing.

38.     Plaintiff received at least five (5) unauthorized phone calls to his personal cell phone ending in -4604 within a thirty-day period from telemarketers calling on behalf of Defendant Milberg soliciting their legal services ("the calls").

39.     The calls all started with a 3-4 second delay of dead air followed by an audible beep (indicating the calls were made using an ATDS) before connecting Plaintiff to a telemarketer.

40.     Telemarketer did not ask for Plaintiff by name indicating it to be a randomly generated phone call that could have reached anybody.

41.     The calls were generated using an ATDS that has the capacity to generate random or sequential telephone numbers, and to dial such numbers.

6

42.     Plaintiff has never had any relationship with Defendant Milberg and never knew who Defendant Milberg was prior to the calls being made to his personal cell phone.

43.     Upon information and belief, Plaintiff has received additional calls within the past six months from telemarketers calling on behalf of Defendant Milberg that are unknown to Plaintiff at this time but can be revealed during discovery.

44.     Plaintiff was never stationed at Camp Lejeune and was hung up on by the telemarketers on calls #1-4 on the table below because Plaintiff would give his name and the telemarketer would hang up the phone upon hearing Plaintiff's name.

45.     Through information and belief, the telemarketers in this case have Plaintiff on a "do not call list," but continued to call Plaintiff because the system placed automated calls to Plaintiff without human intervention.

46.     On November 29, 2022, at 10:29 AM Plaintiff received a call from an unknown telemarketer from phone number 814-615-2235 soliciting Plaintiff Camp Lejeune lawsuit representation.

47.     Call #5, On December 1, 2022, Plaintiff received a call from a telemarketer from phone number 814-615-2436 again asking Plaintiff qualifying questions regarding Camp Lejeune legal representation. When Plaintiff answered, there was a 3-4 second delay of dead air followed by an audible beep (indicating the call was made using an ATDS) before being connected to the telemarketer.

48.     Plaintiff was annoyed and frustrated by the persistent unauthorized phone calls from telemarketers soliciting Camp Lejeune lawsuit claims so Plaintiff gave the telemarketer his brother's information along with saying his father was stationed at Camp Lejeune for the sole purpose of identifying the company responsible for the calls.

7

49.     The telemarketer informed to Plaintiff,

> "Sir, basically now the government is providing you with a financial cash settlement that you're entitled to so I was just going to connect your line with my legal team and they will let you know what the benefits you will be getting okay."

50.     The telemarketer then connected Plaintiff to a female telemarketer named "Toni" that

stated she was with the "Camp Lejeune enrollment center."

51.     Defendant Milberg instructs their telemarketers to say they're from the "Camp Lejeune

Enrollment Center" in order to hide their true identity and duck liability for violating the TCPA.

52.     Toni asked more qualifying questions and continued to Plaintiff for Camp Lejeune legal

representation on behalf of Defendant Milberg,

53.     Toni informed Plaintiff,

> "I do have some good news for you, it looks like you do meet the criteria for a potential settlement."

54.     Toni also informed Plaintiff that the law firm representing Plaintiff in his case would be

Defendant Milberg.

55.     Plaintiff then received an email from Toni from info@consumerenrollments.org that

contained the retainer for Plaintiff to sign from Defendant Milberg.

56.     The email Plaintiff received from Toni confirmed the law firm responsible for the calls.

57.     Plaintiff received an additional welcome email from Defendant Milberg on December 5,

2022, from email camplejeune.clientcare@milberg.com.

58.     Plaintiff had never heard of Defendant Milberg prior to the calls, nor had he ever been a

client of Defendant Milberg.

59.     Plaintiff did not provide Defendant Milberg with his prior express written consent to

receive the calls.

60.     Table A below summarizes the phone calls Plaintiff received on behalf of Defendant:

Table A

| Number: | Date | Time | Caller ID | Notes |
|---------|------|------|-----------|-------|
| 1 | 11//11/2022 | 8:43 AM | 469-728-8088 | Telemarketer calling soliciting Camp Lejeune claims |
| 2 | 11/11/2022 | 8:53 AM | 469-746-9223 | Telemarketer calling soliciting Camp Lejeune claims |
| 3 | 11/17/2022 | 10:54 AM | 814-618-6275 | Telemarketer calling soliciting Camp Lejeune claims |
| 4 | 11/29/2022 | 10:29 AM | 814-615-2235 | Telemarketer calling soliciting Camp Lejeune claims |
| 5 | 12/01/2022 | 9:19 AM | 814-615-2436 | Telemarketer calling soliciting Camp Lejeune claims. Emailed retainer from Milberg |

61.     Defendant employs outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

62.     Defendant Milberg's telemarketers and their agents and co-conspirators amassed lists of thousands of potential clients from public records, and data aggregators, and then placed phone calls using an ATDS *en masse* to market their legal services.

63.     Defendant Milberg has knowledge of and has adopted and maintained TCPA violations as a sales strategy. Defendant Milberg knew full well that their telemarketers were calling and harassing consumers in an attempt to procure business on behalf of Defendant Milberg. Defendant Milberg willfully accepts these referrals and compensates the telemarketers for their illegal phone calls.

64.     Defendant Milberg refuses to take any action to stop or curtail the unlawful sales practices that violate the TCPA because these practices benefit Defendant financially.

9

65.     On December 21, 2022, Plaintiff searched the

https://direct.sos.state.tx.us/telephone/telephonesearch.asp website for Defendant's telephone

solicitation registration and did not find one. Defendant Milberg is not registered pursuant to §

302.101 of the Texas Business & Commerce Code to provide telephone solicitations. The

https://direct.sos.state.tx.us/telephone/telephonesearch.asp website ("Texas Registration

Database") does not contain Defendant's registration.

66.     Defendant Milberg does not qualify for an exemption under § 302.101.

67.     No emergency necessitated none of the alleged phone calls.

68.     Plaintiff was harmed by the calls. Plaintiff was temporarily deprived of the legitimate use

of his phone because the phone line was tied up during the telemarketing calls and his privacy

was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating,

obnoxious, annoying, a nuisance, and disturbed the solitude of Plaintiff. The calls caused

Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from

otherwise using his telephone for lawful purposes.

## **VICARIOUS LIABILITY OF DEFENDANT MILBERG**

69.     Defendant is vicariously liable for the telemarketing calls that generated the lead on their

behalf.

70.     The FCC is tasked with promulgating rules and orders related to enforcement of the

TCPA. 47 U.S.C. § 227(b)(2).

71.     The FCC has explained that its "rules generally establish that the party on whose behalf a

solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13

(1995).

72.     The FCC reiterated that a company on whose behalf a telephone call is made bears the

responsibility for any violations. *In re Rules and Regulations Implementing the Telephone*

*Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf

of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a

third party on another entity's behalf under 47 U.S.C. § 227(b)).

73.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post

may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave
> consumers in many cases without an effective remedy for telemarketing
> intrusions. This would particularly be so if the telemarketers were
> judgment proof, unidentifiable, or located outside the United States, as is
> often the case. Even where third-party telemarketers are identifiable,
> solvent, and amenable to judgment limiting liability to the telemarketer
> that physically places the call would make enforcement in many cases
> substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer separately
> in order to obtain effective relief. As the FTC noted, because sellers may
> have thousands of independent marketers, suing one or a few of them is
> unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

74.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual

relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the

telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

75.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's

liability requires a finding of formal agency and immediate direction and control over the third-

party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

11

76.    To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

77.    Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

78.    Defendant is legally responsible for ensuring that the affiliates that make telemarketing calls on their behalf comply with the TCPA when so doing.

79.    Defendant knowingly and actively accepted business that originated through illegal telemarketing.

80.    Defendant knew (or reasonably should have known) that their telemarketers were violating the TCPA on their behalf but failed to take effective steps within their power to force their telemarketer to cease that conduct.

81.    By hiring a company to make calls on its behalf, Defendant "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

82.    Moreover, Defendant maintained interim control over the actions of its telemarketers.

83.    For example, Defendant had absolute control over whether, and under what circumstances, they would accept a customer from its telemarketers.

84.    Furthermore, Defendant had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential clients of Defendant and the ability to require them to respect the National Do Not Call Registry.

85.     Defendant also gave interim instructions to its telemarketers by providing lead-qualifying instructions and lead volume limits.

86.     Defendant donned its telemarketers with apparent authority to make the calls at issue. Therefore, leading the telemarketers to pitch Defendant's legal services in the telemarketing calls.

87.     Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

88.     "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

89.     A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

90.     Defendant's telemarketers transferred customer information, including Plaintiff's contact information, directly to Defendant. Thus, the telemarketer had the "ability . . . to enter consumer information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

91.     Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a

reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

92.     Defendant is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a client when telemarketers solicited Plaintiff for legal services on behalf of Defendant.

## VIOLATIONS OF THE TEXAS BUSINESS AND COMMERCE CODE § 302.101

93.     The actions of the Defendant violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

94.     Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

95.     The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

96.     Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

97.     Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

14

98.     Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the functionality of his phone decreased because of unnecessary charging, erosion of phone memory, and had his privacy invaded by the harassing telemarketing calls.

99.     Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent a "nuisance and invasion of privacy."

100.    Plaintiff has been annoyed, harassed, and irritated by unauthorized calls placed on behalf of Defendant.

101.    Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone by placing unwanted telemarketing calls to Plaintiff.

## PLAINFF'S CELL PHONE IS A RESIDENTIAL NUMBER

102.    The calls were to Plaintiff's cellular phone -4604, which is Plaintiff's personal cell phone, that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence, has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name and pays the cell phone from his personal accounts.

## CAUSES OF ACTION:

## COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

103.    Plaintiff realleges and incorporates by reference each and every allegation set forth in preceding paragraphs 1-102.

104.    Defendant and/or their affiliates or telemarketers violated the TCPA, 47 U.S.C. §
227(b)(1)(A)(iii), at least five (5) times by placing non-emergency telemarketing calls to
Plaintiff's cellular telephone number using an automatic telephone dialing system without his
prior express written consent.

105.    Plaintiff was statutorily damaged at least five (5) times under 47 U.S.C. § 227(b)(3)(B)
by the Defendant by the telephone calls described above, in the amount of $500.00 per call.

106.    Plaintiff was further statutorily damaged because the Defendant willfully or knowingly
violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount
to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing
violation.

107.    Plaintiff is also entitled to and does seek an injunction prohibiting the Defendant and their
affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-
emergency telemarketing calls to any cellular telephone number using an ATDS and/or without
prior express written consent.

## COUNT TWO:
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

108.    Plaintiff realleges and incorporates by reference each and every allegation set forth in
preceding paragraphs 1-102.

109.    Defendant's telemarketers/agents called Plaintiff's private residential telephone number
which was successfully registered on the National Do-Not-Call Registry more than thirty-one
(31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C.
§ 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

16

110.    Plaintiff was statutorily damaged at least five (5) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telemarketing calls described above, in the amount of $500.00 per call.

111.    Plaintiff was further statutorily damaged because the Defendant willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

112.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE

### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitation Registration Certificate

113.    Plaintiff realleges and incorporates by reference each and every allegation set forth in preceding paragraphs 1-102.

122.    Defendant's telemarketers/agents made at least five (5) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

123.    As a result of Defendant's telemarketers/agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code 302.302(a).

124.    As a result of Defendant's violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees. Tex. Bus. and Com. Code 302.302(d).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the Defendant jointly and severally as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

C.    An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.    An award of $1500 per phone call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporations for 5 calls.

E.    An award of $1500 per phone call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations for 5 calls.

F.    An award of $5,000 per phone call in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.    An award to Mr. Callier of damages, as allowed by law under the TCPA;

H.    An award to Mr. Callier of interest, costs, and attorneys' fees, as allowed by law and equity

I.    Such further relief as the Court deems necessary, just, and proper.

February 3, 2023,                                   Respectfully submitted,

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604